J-A07015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.P., A MINOR, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: L.P. and J.P. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1520 WDA 2016 |

Appeal from the Order Entered September 8, 2016
In the Court of Common Pleas of Cambria County
Civil Division at No(s): CP-11-DP-004-2016/FID; 11-FN-008-2016

BEFORE:   OLSON, STABILE, and STRASSBURGER[*], JJ.

MEMORANDUM BY OLSON, J.:                         **FILED JUNE 21, 2017**

L.P., ("Mother") and J.P. ("Father") (collectively, "Parents") appeal from the order dated September 7, 2016, and entered on September 8, 2016, denying their motion for the recusal of the trial court judge presiding over the juvenile proceedings involving their dependent child, Z.P. ("Child") (born in September 2015).  We affirm.

In its opinion dated November 3, 2016, and entered on November 4, 2016, the trial court ably set forth the factual background and procedural history of this appeal, which we incorporate herein.  Trial Court Opinion, 11/4/16, at 1-5.  Importantly, this Court previously addressed Parents'

_____

[*] Retired Senior Judge assigned to the Superior Court.

appeal from the trial court's order entered on March 8, 2016. The order adjudicated Child dependent under 42 Pa.C.S.A. § 6302, as a victim of physical abuse under the Child Protective Services Law, 23 Pa.C.S.A. § 6303(b.1)(8)(iii) (regarding forcefully shaking a child under one year of age), with Father identified as the perpetrator under 23 Pa.C.S.A. § 6303, and set forth the court's disposition. *In the Interest of: Z.P., a Minor, Appeal of: L.P. and J.P., Natural Parents*, ___ A.3d ___ (Pa. Super. 2016) (unpublished memorandum) at 1-10.

On September 22, 2016, we affirmed the adjudication and dispositional order of the trial court. *Id.* at 10. The fourth issue in this prior appeal was, "Whether the trial judge, Judge Tamara R. Bernstein, should have recused, and whether [Parents'] counsel was ineffective for failing to file a motion for recusal." *Id.* at 8. The panel found the recusal issue, as part of an ineffectiveness claim, was meritless. The panel stated: "We agree with the court's analysis in its opinion that Parents' contention that Judge Bernstein was [not] impartial because she had, in her former position as a prosecutor, prosecuted a shaken-baby case is indeed the 'start of a quick slide down a very slippery slope[.]'" *Id.* at 10 (citing Trial Court Opinion, 5/6/16, at 15).[1] On October 14, 2016, this Court denied

---

[1] The trial court noted that no motion for recusal had been filed on behalf of Parents. Trial Court Opinion, 5/6/16, at 14-15.

reargument/reconsideration of our order, and, on December 30, 2016, our Supreme Court denied allowance of appeal.

In the meantime, on August 15, 2016, Parents filed a motion to recuse with respect to Judge Bernstein captioned "Motion of [Parents] to Disqualify the Honorable Judge Tamara Bernstein from Presiding Over this Matter Due to Judge Bernstein's Service as Chairwoman of Cambria County's Children and Youth Services[*] Near Death Review Team, as a Member of the Cambria County Coroner's Office Death Review Team." On September 7, 2016, the trial court heard argument on the motion to recuse prior to the permanency review hearing held on that date.[2] Subsequently, on September 8, 2016, the trial court entered the order, dated September 7, 2016, denying the motion for recusal. On October 6, 2016, Parents timely filed a notice of appeal, along with a concise statement pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[3]

_____

[2] The scheduling order provided separate times for the two hearings to allow for the recusal of Judge Bernstein, if appropriate.

[3] On September 14, 2016, the trial court entered the permanency review order, which, *inter alia*, scheduled a further review hearing to occur on November 23, 2016. The trial court's docket does not reflect a separate order scheduling the next permanency review hearing to occur on November 23, 2016, however. Parents do not challenge the September 14, 2016 permanency review order in this appeal, nor does the trial court docket or this Court's docket reflect that they challenged the permanency review order in a separate appeal. As the permanency review order was dated and entered subsequent to the order on appeal, it is not part of the certified record for the present appeal. *See Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa. Super. 2016) (*en banc*) (stating that matters which are not of
*(Footnote Continued Next Page)*

On appeal, Parents raise one issue:

Whether the Honorable Trial Court erred and abused its discretion in failing to recuse herself from this matter, thereby denying Appellants the right to due process, where the cumulative effect of the Trial Court's recent campaign representations, and conduct and conclusions at the dependency and abuse hearing in this matter showed her bias and also revealed an appearance of partiality in actions involving alleged child abuse[?]

Parents' Brief at 2.[4]

In their brief, Parents argue as follows:

The importance for Appellants to have a fair trial cannot be understated. The Trial Judge's decision finding abuse and dependency of their infant son will follow them throughout their son's childhood, necessitating, among other things, a "founded" report of child abuse, which is placed on the Commonwealth's Childline & Abuse Registry. Due to their names appearing on the registry, Appellants will forever be barred from volunteering for their son's school or organization activities.

However, the evidence shows that, less than a year before these hearings, the Trial Judge campaigned for the bench by highlighting her experience and pride in prosecuting alleged child

_(Footnote Continued)_ ————————

record cannot be considered on appeal). We note, for purposes of reviewing the denial of the recusal motion, that the trial court scheduled further proceedings in the dependency matter _via_ that permanency review order, such that further dependency proceedings are contemplated.

[4] Parents' concise statement is lengthier and more complex than the statement of questions involved portion of their brief. However, we find that they have preserved the challenge to the denial of their motion for recusal of the trial court judge. **Cf. Krebs v. United Refining Company of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal).

abusers. Her nondisclosures and her conduct and conclusions at the hearings of this matter, which were not based on evidence in the record, further evidence her bias.

All of these factors, taken together, created the appearance that Judge Bernstein prejudged this case and was biased against alleged perpetrators of child abuse, such as Appellants. A reasonable person looking at these facts would question the judge's impartiality and the fairness of the hearing.

Accordingly, the Trial Judge erred in refusing to grant the motion for disqualification.

Parent's Brief at 13.

At the outset, we address the procedural posture of the appeal before us. In their recusal motion, Parents assert the cumulative effect of the trial court's rulings in the adjudicatory and dispositional orders is indicative of the trial court's inability to preside over the periodic permanency review hearings in an impartial, unbiased fashion. The denial of a motion to recuse is preserved as an assignment of error that can be raised on appeal following the conclusion of the case. *Reilly by Reilly v. S.E. Pa. Transp. Auth.*, 489 A.2d 1291, 1300-1303 (Pa. 1985). The question of whether Parents' counsel was ineffective for failing to file a motion for recusal prior to the adjudication and disposition of Child as dependent has been ruled upon by this Court and our Supreme Court has denied allowance of appeal. Further, the adjudication of dependency and the disposition at the time of that adjudication have been conclusively decided. Therefore, it might appear that the question of whether the trial court judge should have recused herself in this matter is now moot.

The legal principles that guide our review of whether to apply the mootness doctrine are well settled:

As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. **In re Duran**, PA Super 52, 769 A.2d 497 (Pa. Super. 2001). "An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law," **In re Cain**, 527 Pa. 260, 263, 590 A.2d 291, 292 (1991). In that case, an opinion of this Court is rendered advisory in nature. **Jefferson Bank v. Newton Associates**, 454 Pa. Super. 654, 686 A.2d 834 (Pa. Super. 1996). "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." **Johnson v. Martofel**, 2002 PA Super 79, 8; **In re T.J.**, 699 A.2d 1311 (Pa. Super. 1997).

. . .

Nevertheless, this Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court. **Erie Insurance Exchange v. Claypoole**, 449 Pa. Super. 142, 673 A.2d 348 (Pa. Super. 1996); **Commonwealth v. Smith**, 336 Pa. Super. 636, 486 A.2d 445 (Pa. Super. 1984).

**In re D.A.**, 801 A.2d 614, 616 (Pa. Super. 2002).

Here, the adjudication of dependency and the disposition at the time of that adjudication have been conclusively decided, as this Court denied reargument/reconsideration of our September 22, 2016 decision, and our Supreme Court denied allowance of appeal. However, the dependency case is ongoing, with periodic permanency review hearings. Accordingly, we find the question of whether the trial court judge should have granted the motion

to recuse herself from the dependency case is not moot, as any proven bias would be capable of repetition yet evading review.

In turning to the merits of Parents' claim, we note that we review a trial court's decision to deny a motion to recuse for an abuse of discretion. *Vargo v. Schwartz*, 940 A.2d 459, 471 (Pa. Super. 2007). Our review of a trial court's denial of a motion to recuse allows for deference to the trial court's decision on the matter. *Id*. ("we extend extreme deference to a trial court's decision not to recuse"). In *Commonwealth v. Harris*, 979 A.2d 387, 391-392 (Pa. Super. 2009), this Court stated, "We recognize that our trial judges are 'honorable, fair and competent,' and although we employ an abuse of discretion standard, we do so recognizing that the judge [her]self is best qualified to gauge [her] ability to preside impartially." *Harris*, 979 at 391-392 quoting, in part, *Commonwealth v. Bonds*, 890 A.2d 414, 418 (Pa. Super. 2005). Thus, a trial court judge should grant the motion to recuse only if a doubt exists as to his or her ability to preside impartially or if his or her impartiality can be reasonably questioned. *In re Bridgeport Fire Litigation*, 5 A.3d 1250, 1254 (Pa. Super. 2010).

In order to prevail on a motion for recusal, the party seeking recusal must "produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *In re S.H.*, 879 A.2d 802, 808 (Pa. Super. 2005) quoting *Arnold v. Arnold*, 847 A.2d 674, 680–681 (Pa. Super. 2004).

To the extent that Parents allege bias on the part of the trial court judge with regard to the adjudication and disposition, we have already reviewed and rejected such claim in *In the Interest of: Z.P., a Minor, Appeal of: L.P. and J.P., Natural Parents*, 494 WDA 2016 (Memorandum filed September 22, 2016), at 9-10. We have denied reargument and reconsideration, and our Supreme Court has denied allowance of appeal. We will not revisit that decision.

To the extent that Parents are alleging that bias on the part of the trial court judge necessitates her recusal in the ongoing permanency review proceedings subsequent to the adjudication and disposition, again, we reject the claim.

We agree with the trial court judge that Parents failed to satisfy their burden of production. Our Supreme Court has stated, "[a] jurist's former affiliation, alone, is not grounds for disqualification." *Commonwealth v. Abu-Jamal,* 720 A.2d 79, 90 (Pa. 1998). In this appeal, Parents are not challenging the permanency review order that resulted from the permanency review hearing held on September 7, 2016. We discern no bias from the "cumulative effect" of the trial court judge presiding over the prior adjudicatory and dispositional hearing, and the subsequent permanency review hearings. The fact that the trial court judge knows a court-appointed special advocate ("CASA") professionally, or has been involved in shaken baby syndrome matters and committees as an assistant district attorney

does not warrant recusal. **See id.** (holding that a judge's affiliation with the Fraternal Order of Police was not grounds for disqualification); **City of Pittsburgh v. DeWald**, 362 A.2d 1141, 1143-1144 (Pa. Cmwlth. 1976) (holding that the trial judge was not required to recuse herself based on her having practiced law with the attorney for one of the parties). Parents' bias argument does not warrant reversal in this instance. "It has long been held that trial judges, sitting as factfinders, are presumed to ignore prejudicial evidence in reaching a verdict." **Commonwealth v. Irwin**, 579 A.2d 955, 957 (Pa. Super. 1990).

Accordingly, our review of the record in this matter supports the trial court's factual findings and conclusions. As we find that the record supports the trial court's assessment, we will not disturb the trial court judge's decision that her recusal was not required. We, therefore, affirm the trial court's September 8, 2016 order denying Parent's Motion to Disqualify the Honorable Judge Tamara Bernstein on the basis of the discussion in the trial court's opinion entered on November 3, 2016. Trial Court Opinion, 11/4/16, at 7-17. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Bernstein's opinion.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/21/2017</u>

# IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
## JUVENILE DIVISION

|  |  |
|---|---|
| IN THE MATTER OF: | * CP-11-DP-0000004-2016 |
| Z.P., DOB 9/17/2015, | * Superior Court No. 1520 WDA 2016 |
| Appeal of L.P. and J.P., Natural Parents | * |

# RULE OF APPELLATE PROCEDURE 1925 (a)(2)

# OPINION

**Bernstein, J.:** L.P. and J.P. the appellants herein, are the natural parents of Z.P.[1] who was

determined to be a dependent child on March 8, 2016, at which time he remained in the care

of his mother L.P. (Mother). In addition to finding Z.P. to be a dependent child the court

found that Z.P. was a victim of child abuse and that his father, J.P. (Father) was the

perpetrator of the abuse.

On April 6, 2016, Appellants filed a Notice of Appeal and Concise Statement of

Errors Complained of on Appeal which included the issue of whether the Court erred by

failing to recuse itself for bias during the Dependency Hearing. On September 22, 2016, the

Pennsylvania Superior Court issued an order affirming the trial court's decision at the

Dependency Hearing, including the trial court's decision not to recuse itself for bias. Prior to

the subsequent Permanency Review Hearing on September 7, 2016, Appellants filed a

Motion to Disqualify and for Recusal of the trial court from any further hearings held in the

matter of Z.P. The trial court denied said motion and Appellants again filed a timely Notice

---

[1] Since the subject of this appeal is a juvenile the primary parties will be referred to by their initials to provide confidentiality.

**A-2**

of Appeal and Concise Statement of Errors Complained of on Appeal ("Concise Statement") on October 6, 2016, pursuant to Pennsylvania Rules of Appellate Procedure 905(a)(2) and 1925(a)(1). Pa.Rs.A.P. 905, 1925 (West 2016). Appellants' Concise Statement asserts that Appellants' have been denied their due process rights and raises these three allegations of error:

1. Did the Court err in denying the Motion for Recusal since Judge Bernstein previously served as an Assistant District Attorney during which time she prosecuted child abuse cases?

2. Did the Court err by denying Appellants' Motion for Recusal when Judge Bernstein had previously served as a member of the CYS Near Death Review Team and Coroner's Death Review Team?

3. Did the Court err in denying the Motion for Recusal when a Beginnings Inc. Board Member who serves as a representative to the Court Appointed Special Advocates (CASA) acted as treasurer for Judge Bernstein's judicial campaign?

For the reasons discussed below the appeal should be dismissed and the Court's Order affirmed.

## FACTUAL BACKGROUND[2]

This jurist was elected to the Cambria County Court of Common Pleas after serving as a career prosecutor in the Commonwealth of Pennsylvania. During that time, this jurist served as a representative of the District Attorney's Office on both the CYS Near Death Review Team and the Cambria County Coroner's Death Review Team. Both teams create positions to be filled by certain offices and agencies having an interest in the subject matter relevant to

---

[2] This summary is distilled from the transcripts without citation to specific portions of the record.

each team. Both teams created a position for the Cambria County District Attorney's Office and the District Attorney's office assigned this jurist, in her capacity as an Assistant District Attorney, to attend the teams' meetings. Cambria County Coroner Jeff Lees testified that, "The District Attorney's Office is assigned to the [Death Review Team]. The District Attorney assigns a representative from their office to attend meetings that are held at my office." N.T. 9/7/2016 pp. 15. Furthermore, when asked by Appellants' counsel, "So from a technical point of view, [Judge Bernstein] wasn't a member, but her attendance was as representative," Mr. Lees responded that this was correct. *Id.*

The purpose of the teams is to review and analyze data from relevant cases and then try to educate and prevent similar cases from occurring in the future. The teams do not work on current or even recent cases, but rather review each case a significant amount of time after the incident in question. Specifically, the Coroner's Death Review Team reviews every fatality of individuals under age 21, whether the death occurred by homicide, auto accident, or any other means. During the time that this jurist served as a representative on the CYS Near Death Review Team, the Team did not review any case related to Z.P. and this jurist had no outside knowledge of Z.P. nor his parents prior to this case coming before the court.

This jurist attended the team meetings at the direction of the District Attorney's Office and did not serve in her individual capacity. After being elected to the Court of Common Pleas, this jurist resigned her position as an Assistant District Attorney on December 31, 2105 and was sworn in as Judge in January 2016. Upon resignation on December 31, 2015, this jurist could no longer attend team meetings as a representative of the District Attorney's Office because this jurist was no longer an Assistant District Attorney. This jurist was never appointed to the teams and, as such, did not formally resign from them. It logically follows

that, since this jurist was no longer an Assistant District Attorney, this jurist was no longer eligible to attend the meetings on behalf of the District Attorney's Office.

During the time that this jurist was assigned to the CYS Near Death Review team, Dr. Wolford, a witness in the case at hand, did interact with the Near Death Review team on a limited number of occasions. Michelle Rager, Assistant Administrator for Cambria County Children and Youth Services, testified that Dr. Wolford was never a member of the CYS Near Death Review Team. N.T. 9/7/2016 pp. 27. Rather, Dr. Wolford would have only participated when she was treating a child that the Team was involved with. For example, Ms. Rager testified that Dr. Wolford may call the Team to give her "input . . . regarding that specific child and what the child may need following discharge from the hospital." *Id.* Dr. Wolford, like any other doctor who was treating a child that the Team was involved with, merely gave information to the team as to the status of the child whom she was treating. She participated in meetings where the child at issue was her patient. In fact, as this jurist disclosed at the hearing, this jurist did recall that while Dr. Wolford may have participated with the Near Death Review Team, this jurist had no recollection of the facts of the case in which Dr. Wolford was witness or what children Dr. Wolford was treating.

As an Assistant District Attorney, this jurist prosecuted a multitude of different kinds of cases, including some shaken-baby cases. In one instance, the Commonwealth and the defendant agreed to a stipulation that was read by the judge to the jury, "The Commonwealth agrees that they did not maintain proper contact with the [victim's mother], regarding the case against the defendant." *Comm. v. Miller*, No. 1802 WDA 2013, 2014 WL 10844216 at *1 (Pa. Super. Aug. 5, 2104). The court ultimately found that the Commonwealth did not intentionally withhold a supplemental report, but that "it was inadvertently not printed from

[the Detective's] computer and was not provided to the Commonwealth until a week before trial." *Id.* at \*4.

During the campaign in 2015, the Campaign Committee to Elect Tammy Bernstein for Judge posted a quote from this jurist on its Facebook page where this jurist stated, "while working as an Assistant District Attorney, it is never easy when it comes to these cases, but to come across it again and again and this time when the child dies, it's frustrating and disappointing." PETITIONER'S EXHIBIT #2. The Campaign Committee's post continued, "At Charles' sentencing, Tammy became emotional in speaking about the infant's death, saying 'This was not a brief, uncontrolled act, not the first time he took him from his bedroom. He shook (his infant son) three times before, he had a history of violence.'" *Id.* Among many other quotes by this jurist used by the Campaign Committee referencing all different kinds of crimes and victims, the Campaign Committee again posted on its Facebook page that, "Tammy has prosecuted all types of crimes in the courtroom. She is especially proud of all the work she has done for child victims." *Id.* The Campaign Committee also posted, "Tammy has spent her career seeking justice for children as an assistant DA," and created an advertisement that was posted online and mailed to voters which, among other things, stated that this jurist, as an Assistant District Attorney, had prosecuted murders, child abusers, and drug dealers. *Id.*; PETITIONER'S EXHIBIT #7.

Finally, the Campaign Committee was made up of a number of people which included Julie Katz. Ms. Katz also served as a Board Member for Beginnings Inc. where she acted as the representative from Beginnings Inc. to the Pennsylvania Court Appointed Special Advocates (CASA). On March 22, 2015, the Campaign Committee posted a picture of this jurist and Ms. Katz at a local CASA fundraiser.

# DISCUSSION

I.     **Did the Court err in denying the Motion for Recusal when Judge Bernstein previously served as an Assistant District Attorney during which time she prosecuted child abuse cases?**

Appellants' first allegation of error is that the trial court erred by failing to recuse itself for bias since Judge Bernstein previously served as an Assistant District Attorney and prosecuted child abuse cases. At the outset, it is important to note that Appellants raised this identical issue in their earlier appeal of the Dependency Order in this case. *See In the Interest of Z.P.*, 494 WDA 2016. The Pennsylvania Superior Court affirmed the trial court's order and held that "Parents' contention that Judge Bernstein was impartial because she had, in her former position as a prosecutor, prosecuted a shaken-baby case is indeed the 'start of a quick slide down a very slippery slope[.]" *Id.* at p. 10.

Appellants again assert that they have been denied due process as the trial court should have recused itself based on this jurist's past position as an Assistant District Attorney, the shaken-baby cases that this jurist prosecuted in her past position, and the statement made by this jurist's Campaign Committee that, "Tammy became emotional in speaking about the infant's death." PETITIONER'S EXHIBIT #2.

The question of recusal has been consistently addressed by the courts to determine whether due process has been violated. Although "[o]ur Code of Judicial Conduct '[s]ets a norm of conduct for all our judges [it] does not impose a substantive legal dut[y] on them.'" *Lomas v. Kravitz*, 130 A.3d 107, 126 (Pa. Super 2015) (quoting *Commonwealth v. Druce*, 577 Pa. 581, 848 A.2d 104, 109 (2004)). Rather, the courts have set out a two-part test to be applied by a trial court to determine whether recusal is proper.

The standards for recusal are well established:

It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. *Rizzo v. Haines*, 520 Pa. 484, 512–513, 555 A.2d 58, 72 (1989); *Commonwealth v. Miller*, 541 Pa. 531, 664 A.2d 1310 (1995). As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. *Commonwealth v. Travaglia*, 541 Pa. at 143–145, 661 A.2d at 370, citing *Goodheart v. Casey*, 523 Pa. 188, 565 A.2d 757 (1989). In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. *Goodheart v. Casey*, 523 Pa. 188, 201–203, 565 A.2d 757, 764 (1989). Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. *Id.* at 199–201, 565 A.2d at 763. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent. *Reilly v. SEPTA*, 507 Pa. 204, 221–223, 489 A.2d 1291, 1300 (1985).

*Commonwealth v. Abu-Jamal*, 553 Pa. 485, 506, 720 A.2d 79, 89 (1998). Furthermore, "[a]ny tribunal permitted to try cases and controversies must not only be unbiased, but must avoid even the appearance of bias." *In the Interest of McFall*, 533 Pa. 24, 617, A.2d 707, 713 (1992). Even so, "there is a presumption that judges of the Commonwealth are honorable, fair and competent, and that when confronted with a recusal demand, are able to determine whether they can rule in an impartial manner, free of personal bias or interest in the outcome." *Cellucci v. Laurel Homeowners Ass'n*, 142 A.3d 1032, 1043 (Pa. Commw. Ct. 2016).

Here, Appellants take issue with essentially three different factors relating to this jurist's time as an Assistant District Attorney that they allege show bias or the appearance of bias. First, that this jurist had prosecuted shaken-baby cases in the past. Second, that this jurist's Campaign Committee made representations regarding this jurist's record as a prosecutor, and finally, that this jurist became emotional after a shaken-baby case.

**A-2**

Appellants' first argument is that once a judge has served as a prosecutor in a case involving a shaken baby, she cannot be impartial in any case with a similar fact pattern. This argument is identical to that raised by Appellants in their earlier appeal of a Dependency Order in this case. *See In the Interest of Z.P.*, 494 WDA 2016. As stated *supra*, the Superior Court affirmed the trial court's decision not to recuse stating that to hold otherwise would be the "start of a quick slide down a very slippery slope[.]" *Id.* at p. 10. Again, Appellants' position is not supported by the evidence in this matter.

Taken to its logical conclusion, Appellants' argument would mean that any judge who previously practiced criminal law as a prosecutor or defense attorney would be precluded from presiding over any criminal matter since their prior position rendered them automatically biased. Similarly, no judge who had represented civil clients could oversee a civil proceeding, those who practiced in the area of domestic relations would be barred from presiding over those cases, etc. The result is patently absurd and the Court has found no case that reached such a holding. Instead, as noted above, in each case the party seeking recusal must "produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Abu-Jamal*, 720 A.2d at 89. Here there was no evidence offered that established any degree of bias.

In Appellants Concise Statement they also point to shaken-baby case where this jurist served as a member of the "prosecutorial team for which misconduct was found by the trial court requiring a curative instruction to the jury. (Comm v. Miller, Superior Ct. 672 WDA 2011)." APPELLANTS' CONCISE STATEMENT. In *Miller*, the prosecution failed to timely turn over a supplemental report regarding a witness in the case. However, any insinuation made by Appellants that this jurist somehow purposefully participated in unethical behavior is a

mischaracterization and patently false. The Superior Court addressed the case in question when the defendant appealed the denial of his petition for Post Conviction Relief and found that, "the [trial] court . . . ruled out a curative instruction." *Commonwelath v. Miller*, 1802 WDA 2013 (Pa. Super.). Instead, the parties merely agreed on a stipulation that corrected the error. The Court further found that, "the record reveals that the Commonwealth did not intentionally withhold the supplemental report, but that it was inadvertently not printed from Detective Wagner's [c]omputer and was not provided to the Commonwealth until the week before trial." *Id.* Thus, this jurist's participation as an Assistant District Attorney during the case in question neither shows bias nor the appearance of impropriety such that recusal would be required in the case at hand.

Next, Appellants provide evidence of representations made by this jurist's Campaign Committee alleging that such statements and representations must prove bias or the appearance of bias. Though not determinative as to the issue of due process, the trial court considered the Pennsylvania Code of Judicial Conduct and the related Formal Advisory Opinions. The United States Supreme Court has held that, "It is important to note that due process 'demarks only the outer boundaries of judicial disqualifications.' Most questions of recusal are addressed by more stringent and detailed ethical rules." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1908 (2016) (quoting *Aetna Life Ins. V. Lavoie*, 475 U.S. 813, 828 (1986)). At hearing, Appellants entered the Judicial Ethics Committee of the Pennsylvania Conference of State Trial Judges Formal Advisory Opinion §99-1 as Petitioner's Exhibit 4. Opinion §99-1, titled "Campaign Advertising," which advises that, "The electorate is best served by advertising which accurately showcases the candidate's credentials." Furthermore, "[t]he candidate must take particular care that the ad does not in any way suggest that he or she will

favor any particular group of litigants or make decisions on any basis other than the facts and the law."

This jurist's Campaign Committee posted on its Facebook page that this jurist was "especially proud of the work she has done for child victims. As judge, Tammy will continue to fight for justice and protect our communities." PETITIONER'S EXHIBIT #2. On May 12, 2015, the Committee posted, "Tammy has spent her career seeking justice for children as an assistant DA." *Id*. Finally, on May 3, 2015 the Committee posted that "Tammy achieved a 15-30 year sentence for third degree murder against Justin Charles . . . who violently shook his seven week old son to death . . . . Tammy, who has prosecuted multiple shaken baby cases said, 'It is never easy when it comes to these cases, but to come across it again and this time when the child dies, it's frustrating and disappointing.' At Charles' sentencing, Tammy became emotional in speaking about the infant's death, saying, 'This was not a brief, uncontrolled act, not the first time he took him from his bedroom. He shook (his infant son) three times before. He had a history of violence.'" *Id*.

This court found no case or other authority which would require a judge to recuse when the judge merely outlined her history as a prosecutor during a campaign. Nothing posted by the Campaign Committee committed this jurist to reach a certain decision in child abuse cases. Rather, as the committee posted on May 3, 2015, this jurist is, and has been, committed to resorting justice and order.

Furthermore, it should be noted that the Committee did post and advertise this jurist's record as a prosecutor as to multiple other types of cases. For example, the Committee posted on its website that this jurist had, as an ADA, "successfully tried and convicted many high profile homicide, drug and assault cases resulting in lengthy jail sentences for dangerous

criminals." PETITIONER'S EXHIBIT #3. Additionally, the Committee created an advertisement and mailer that listed this jurist's qualifications which included, "Prosecutes murders, child abusers, and drug dealers." PETITIONER'S EXHIBIT #7. Appellants pick and choose parts of this jurist's campaign materials, but if Appellants' argument was logically extended, then this jurist and any other jurist or candidate who had practiced law would be precluded from hearing the types of cases that the jurist handled while practicing or would at least be unable to advertise the jurist's record and experience as an attorney when campaigning in an election. Specifically, this jurist would be required to recuse herself from not only shaken-baby cases, but also criminal homicide and drug-related cases since this jurist's Campaign Committee posted and advertised regarding experience in these types of case.

Formal Advisory Opinion §99-1 states that, "The electorate is best served by advertising which accurately showcases the candidate's credentials." Requiring recusal from cases based on Appellants' logic would either require an unheard of rate of recusal or essentially prohibit a candidate from advertising her credentials and record as an attorney. Both possibilities would be a disservice to the electorate and in contradiction to Formal Advisory Opinion §99-1.

Finally, Appellants assert that because this jurist, as a prosecutor, "became emotional" at the conclusion of a shaken-baby case, this jurist must not be able to impartially and objectively preside over shaken-baby cases as a judge. At hearing, Appellants argued,

> I would suggest that becoming emotional, you lose objectivity when you have emotion and your campaign committee has told us that at least in one case, now you may, again you may have become emotional in other cases, but I can't find that your campaign committee ever chose to tell the public that you became emotional in anything but a shaken baby syndrome case.

N.T. 9/7/2016 pp. 37. Furthermore, Appellants asserted that,

We're blind to our bias. So when we suggest that maybe there is an appearance of impropriety, it's not that there is any criticism that you're a bad person, or that there is any evil intent. But it may be that you have the inability to see that you don't have the capacity to be impartial in this case.

N.T. 9/7/2016 pp. 30.

Appellants' arguments lack merit as the trial court was unable to find any case that required recusal where a jurist had, in the past, showed emotion when dealing with a similar case. In *Commonwelath v. Tharp*, the Pennsylvania Supreme Court considered the appellant's argument on appeal that the trial court should have recused itself as it was too emotionally involved in the case before it. The appellant in *Tharp* was convicted at trial of first-degree murder and came before the trial court for formal sentencing. Our Supreme Court held,

> Appellant's final argument is that the trial judge erred in failing to recuse himself *sua sponte* and, as a result, she is entitled to a new trial. Specifically, appellant complains that, prior to formally sentencing appellant, the trial judge played an audio recording of the song "The Little Girl," performed by country and western singer John Michael Montgomery. After the song was played, the trial court compared the "sad little life" of the fictitious girl portrayed in the song to the life of Tausha. In addition, the trial court noted that, unlike the girl in the song, Tausha did not get a new chance at life with new parents. Appellant did not move for recusal at sentencing, or at any earlier point during the proceedings before the trial court. Appellant now alleges, however, that, "if the [trial] court was so emotionally effected [sic] and impassioned by the facts of this case as to take the time to locate this song and orchestrate its playing prior to [formal] sentencing, the court should have foreseen that its impartiality could be reasonably questioned and should have recused itself" on its own motion. No relief is due.

*Commonwelath v. Tharp*, 574 Pa. 202, 830 A.2d 519, 533-34 (Pa. 2003). Ultimately, the Court stated that, "Appellant fails to demonstrate that recusal was warranted in this case. Appellant does not identify a single statement, action, ruling by the trial court . . . that reveals bias or partiality against her." *Id.* at 534.

Here, the facts that Appellants allege warrant recusal fall far short of the actions of the trial court in *Tharp*. This jurist's Campaign Committee merely stated that, long before the

commencement of the case at hand, this jurist had become emotional at the completion of a shaken-baby case where the child had died. This jurist made no statements, rulings, or actions during this case that would result in the appearance of impartiality or bias.

Furthermore, Appellants' argument that this jurist must be blind to her own bias and, as a result, unable to act impartially and objectively is unfounded and clearly contradicts the recusal standards and analysis under the law. The law requires a jurist to consider both whether the jurist can act impartially and whether her involvement would create the appearance of impropriety. *See Abu-Jamal,* 720 A.2d at 89. At the second prong of a jurist's recusal analysis,

> The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine the public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear or dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for the abuse of discretion.

*Id.*

The law not only acknowledges that a jurist is not "blind to bias," but places the responsibility of determining bias or the appearance of bias on each individual jurist. The case law clearly holds that a jurist is the most qualified person to rule on her bias or appearance of bias. The law goes so far as to describe such a decision as "personal and unreviewable," absent an abuse of discretion. Thus, Appellants' contentions that this jurist is biased or appears biased because she became emotional in the past and now must be blind to her own bias is directly contrary to the law and the facts in this case. Accordingly, there is no merit to this allegation of error.

**II.** **Did the Court err by denying Appellant's Motion for Recusal when Judge Bernstein had previously served as a member of the CYS Near Death Review Team and Coroner's Death Review Team?**

Appellants' second allegation of error is that the trial court erred by failing to recuse when this jurist had been assigned to attend CYS Near Death Review Team meetings and Coroner's Death Review Team meetings while serving as an Assistant District Attorney. Appellant specifically alleges that an appearance of impropriety exists since Dr. Wolford worked with the Near Death Review Team on the few occasions when she was treating a patient who the Near Death Review Team was also reviewing.

Our Supreme Court has recognized that it "would be an unworkable rule which demanded that a trial judge recuse whenever an acquaintance was a party to or had an interest in the controversy. Such a rule ignores that judges throughout the Commonwealth know and are known by many people, . . . and assumes that no judge can remain impartial when presiding in such a case." *Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312, 318 (1976). Moreover,

> [w]hile the mediation of courts is based upon the principle of judicial impartiality, disinterestedness, and fairness pervading the whole system of judicature, so that courts may as near as possible be above suspicion, there is, on the other side, an important issue at stake: that is, that causes may not be unfairly prejudiced, unduly delayed, or discontent created through unfounded charges of prejudice or unfairness made against the judge in the trial of a cause. It is of great importance to the administration of justice that such should not occur. If the judge feels that he can hear and dispose of the case fairly and without prejudice, his decision will be final unless there is an abuse of discretion. This must be so for the security of the bench and the successful administration of justice. Otherwise, unfounded and ofttimes malicious charges made during the trial by bold and unscrupulous advocates might be fatal to a cause, or litigation might be unfairly and improperly held up awaiting the decision of such a question or the assignment of another judge to try the case. If lightly countenanced, such practice might be resorted to, thereby tending to discredit the judicial system. The conscience of the judge alone is brought in question; he should, as far as possible, avoid any feeling of unfairness or hostility to the litigants in a case.

**A-2**

*Reilly by Reilly v. Southeastern PA. Transp.*, 489 A.2D 1291, 1299 (Pa. 1985).

Here, Appellants assert that the trial court should have recused itself based on past attendance of CYS Near Death Review Team and Coroner's Death Review Team meetings. Additionally, Appellants argue that since Dr. Wolford "also served in 2015 and 2016" on the CYS Near Death Review Team, the trial court had further reason to recuse in this case as CYS called Dr. Wolford as a witness. First, Appellants misrepresent this jurist's participation with the Near Death and Death Review teams. This jurist was appointed to either team and, as such, was never required to resign. As an Assistant District Attorney, this jurist was assigned by the District Attorney to attend these meetings. As both Jeff Lees, Cambria County Coroner, and Michelle Rager, Cambria County CYS Assistant Administrator, stated at the hearing, the Cambria County District Attorney was a member of each team. This jurist was assigned by the DA to attend these meetings as a representative of the DA. When this jurist resigned her position as Assistant District Attorney on December 31, 2015, it would have been impossible for this jurist to participate with these Teams as a representative of the District Attorney. Rather than having to resign, this jurist could no longer receive assignments to attend the meetings from the DA as this jurist no longer worked for the District Attorney. This jurist never served on either team in her individual capacity.

Next, Appellants misconstrue Dr. Wolford's participation and relationship with the CYS Near Death Review Team. In their Concise Statement, Appellants state that Dr. Wolford served on the CYS Near Death Review team in 2015 and 2016. However, Dr. Wolford did not serve on this CYS Near Death Review Team as a member. Rather, she was consulted by the Team when she treated a child whose case the Team was reviewing. For example, Michelle Rager testified at the hearing that in February 2016 Dr. Wolford spoke to the Team via

telephone from the Pittsburgh Children's Hospital. N.T. 9/7/2016 pp. 28. Dr. Wolford's participation with the Team was limited to cases in which she was treating the child who the Team was reviewing. Dr. Wolford did not attend every meeting and, in fact, did not even participate in a majority of the meetings. Thus, the characterization of Dr. Wolford as a member of the Team who has a "very close association through [the] Near Death Review Team" with this jurist is factually incorrect. As such, this jurist's contact with Dr. Wolford and past participation on the Near Death Review Team and Death Review Team do not cause this jurist any bias nor create the appearance of bias. Accordingly, there is no merit to this allegation of error.

III.    Did the Court err in denying the Motion for Recusal when a Beginnings Inc. Board Member who served as a representative to the Court Appointed Special Advocates (CASA) acted as treasurer for Judge Bernstein's judicial campaign?

The final allegation of error raised by Appellants is that the trial court erred by failing to recuse when a Beginnings Inc. Board Member who served as the Board representative for CASA also acted as the treasure of this jurist's Campaign Committee. As stated *supra*, the Pennsylvania Supreme Court has held that it "would be an unworkable rule which demanded that a trial judge recuse whenever an acquaintance was a party to or had an interest in the controversy. Such a rule ignores that judges throughout the Commonwealth know and are known by many people, . . . and assumes that no judge can remain impartial when presiding in such a case." *Perry*, 364 A.2d at 318 (1976).

Although Ms. Katz does not have a personal interest in this case, Appellants seem to argue that as a CASA representative Ms. Katz's interests are somehow aligned with those of Children and Youth Services in the case at hand. Even if this were true, the courts have never

required recusal where a person involved in a jurist's campaign may have some remote and indirect connection to a later case before that jurist. If this was required by the courts, it would again create a slippery slope, mandating recusal whenever an acquaintance of a jurist is remotely connected to a case. This would ignore the two-step analysis that a judge is required by law to employ when considering whether recusal is proper. *See Abu-Jamal*, 720 A.2d at 89.

Here, however, the issue of Ms. Katz's involvement on this jurist's campaign does not create bias or the appearance of bias. There was no evidence that CASA was involved in the case at hand. Even if CASA had been involved, a CASA volunteer does not work for a party to the case, Children and Youth Services. Rather, a CASA volunteer would interact with the child and everyone involved in the child's life. The CASA volunteer would then make recommendations to the court based on the best interests of the child. These recommendations would not necessarily coincide with the concurrent recommendations of CYS. Thus, since a CASA Board Member serving on this jurist's Campaign Committee neither causes this jurist to be biased nor creates the appearance of bias, the trial court did not err by failing to recuse itself and there is no merit to this final allegation of error.

As there is no merit to any allegation of error and for the reasons discussed herein, the appeal should be dismissed and the Court's Order of September 7, 2016, affirmed.

RESPECTFULLY SUBMITTED,

Tamara R. Bernstein, Judge

November 3, 2016